Good morning, Mr. Schwartz. You may proceed when you're ready. Good morning, your honors. May it please the court and council. My name is Brandon Schwartz, and along with my father, Michael Schwartz, I have the honor of representing Restaurant Recycling in this case. The district court impermissibly added allegations to the underlying complaint at issue and construed inferences in favor of the moving party, Employer Mutual Casualty Company, which the parties have referred to as EMC, in this declaratory judgment action, which is now before you on this de novo review. It was only because the district court added allegations to the underlying complaint and only because the district court construed inferences against my client and in favor of EMC, that EMC's motion for judgment on the pleadings was granted. This was improper and requires reversal. This case should have been resolved by federal rule of civil procedure 12C, the EMC pollution exclusion provision in what was and more importantly what was not set forth in New Fashioned Pork's complaint against Restaurant Recycling. What is glaringly barren from New Fashioned Pork's complaint is most important resolution of this appeal. A restaurant recycling is in the fat recycling business. It buys fat, for instance, from restaurants and resells the fat to feed mills. Feed mills, in turn, use this recycled fat as a binding ingredient for their feed to livestock. The underlying complaint here, the liability lawsuit, involved the two parties at the end of a chain of purchasing. New Fashioned Pork and Restaurant Recycling. This product started with Zoetis, who was the manufacturer of the antibiotic Lasalacid, transferred to Heritage, transferred to Shergreen, transferred to Glycerin Traders, to Superior Feed, to Restaurant Recycling, finally to New Fashioned Pork. This case also involves multiple litigations. There was litigation in Michigan State Court related to different underlying plaintiffs. There was litigation before the Minnesota District Court with regards to Superior Feed and its insurance carrier. Okay. Which was settled. But you might want to focus in on the policy here, since we have limited time. Yes, Your Honor. Unbeknownst to Restaurant Recycling, and unbeknownst to New Fashioned Pork, the soy oil here allegedly contained both Lasalacid and Lasket oil. We did not dispute at the district court level that Lasket oil, which is a byproduct in the manufacture of the medication, Lasalacid, excuse me, would be considered a pollutant under the pollution exclusion. Well, if that's true, why don't you lose? Because, Your Honor, and if you look at the Williams case, Williams versus Employers Mutual Casualty Company, you have to examine each issue. In that case, it examined radium, alpha particle activity, and bacteria. It didn't just analyze whether there was multiple substances and one was pollutant. It actually analyzed whether each of those different substances would meet the definition of a pollutant. But if you have one that meets the definition and caused the harm, why wouldn't that be enough to trigger the exclusion? Because if you look at the underlying complaint here, it does not, they lump them together. And when you look at what is properly before the court on the motion and now this appeal, the only expert report that there was, that is encompassed by the pleadings, was that they actually received no Lasalacid at all, none. And so when you're having to distinguish between what is and what is not a pollutant, and you're looking, and I would say to the court, to the Eighth Circuit opinion of 2017, Williams versus Employers, it actually did examine whether radium would or would not be a pollutant. It actually- All of what you're arguing goes to the merits. When you're talking about a duty to defend, the duty to defend is invoked by the terms of the policy. And so here, if, as Judge Colleton mentioned, if there is a pollutant and the policy says the damage is caused in whole or part by these pollutants because it's toxic, then presumably there's no duty to defend. Your Honor, in each of those cases that were cited here, huge difference from this case. Each of those cases, there was an EPA decision or a Minnesota pollutant decision or some governmental classification that the actual substance was a pollutant. For instance, carbon monoxide. We're talking about the one that you've conceded is a pollutant, not the other one. I don't think there's any case that's cited before this course, and I have found no precedent that if there are multiple substances and one is a pollutant, that that's dispositive of the issue. So the underlying case, where you say there's a duty to defend, says our pigs were harmed, the swine were harmed, because there were two substances in there. And you're saying, well, one of the substances wasn't present, but you're conceding that the other substance was. And so, I guess my question is, is why can't then, out of the terms of the policy, say, well, you know what? The pigs were harmed by a contaminant, it's now completely undisputed, and so therefore, we don't have a duty to defend. We did not concede that Laskin oil was present. We conceded that Laskin oil would be considered a pollutant. And the expert report shows that there actually was none of that. But the allegations are that there was some of that, and that's what we're getting at. I think you're confusing the merits with the duty to defend, which are different under Minnesota law. I agree, Judge, I agree. But when you look at what's actually contained in the complaint, it doesn't say that it was because of Laskin oil or Lysalisate. It just says that there was, and they use, the reason, I think, that the case was dismissed was because they used the word contaminate. They don't use it in the sense of the pollution exclusion when you look at what the pollution exclusion says and what it's intended to provide for. Now, I agree that Minnesota is in the minority of jurisdictions here with regards to what a pollution exclusion is supposed to prevent. When you look at the majority opinions, it's supposed to prevent coverage for what we typically think of as pollution here, which this would not fall under. This is a case in which there's a product, Lysalisate, which is not classified by any governmental agency, is a pollutant. It can actually safely be fed to swine. It can, and when you look at what is encompassed by the pleadings, there is actual literature saying that Lysalisate can be safely fed to swine. And when they don't, you don't have a governmental classification such as present in all of the other cases that are cited. Every single case that was relied upon by EMC, every single case that was relied upon by the district court here. Each of those cases involved a substance which the government, through legislature or an EPA act or some other pollution control agency act, had specifically identified, that's a pollutant. That's all fine and good, but in your brief, it's suggestive that you want us to somehow undermine the Minnesota Supreme Court's decision. I sat on that case. I think I even wrote separately in that case. And it's pretty clear that the absolute pollution exclusion under Minnesota law does not require all of the things that you're talking about, EPA. I mean, actually, the FDA has apparently said that these chemicals shouldn't be fed to swine. So you sort of have, you don't have an environmental contaminant, but you at least have a government agency. You're not suggesting that we upend Minnesota law in any way or change Minnesota law, are you? No, I don't think you can. Okay. What I'm saying is that when you look at Minnesota law and you look at the plain language of the complaint, under Federal Rule 12C here, the motion should have been denied. This is not a case in which we can go and look at one of a prior case that dealt with carbon monoxide or with some sort of pollutant. This is a new issue. And what should have been done here was the motion to dismiss should have been denied. And there could have been opinions, expert opinions, in this context, does this constitute a pollutant? In this context, when it can be safely fed, and that's part of it. There's two questions here. There's the first part as to whether it constitutes a pollutant. And there's a second question as to whether it was actually dispersed or not. Now, when you look at the citation, the definition, because that's not a specifically defined term by the policy. We look to the plain meaning of the word. And when you look at the definition that EMC itself cites, it references what I believe to be an intentional act. It says, to cause to break up. New Fashioned Pork's complaint here did not allege that intentional act happened by restaurant recycling. The definition is to cause to break up, and then the example was police disperse the crowd. The police don't go someplace and accidentally disperse a crowd. They go there to intentionally disperse a crowd. Bearing from New Fashioned Pork's complaint is an intentionality requirement that was missing here. So if I have a bowl of soup, and I drop some household chemical in the bowl of soup, I haven't dispersed the household chemical into the soup under the plain meaning of dispersal. I think you're intentionally doing that, though, in your example. No, I trip. I trip, and it goes into the soup, and it gets into the soup, or whatever. That's not a dispersal into the soup? That's, I think in your example, I think that would be. It is a dispersal. That's not what was alleged here, and I think that's a separate question from what's at issue here. So if they don't know that the chemicals are in, somebody in the line doesn't know that the chemicals are in the fat. But it gets dispersed into the fat, these chemicals, these antibiotics, and the byproducts. That can't be a dispersal? I think that's exactly why you buy insurance, is for an unintentional act that caused harm. I mean, that's why you buy insurance. There's an intentional act provision that excludes it. And if you look at the definition of occurrence versus the pollution exclusion, I think that's clear. I think that's why people, businesses buy insurance, is to provide protection for what you just described was an accidental act. I tend to agree with you. That's the reasonable expectation argument that was made in Walters. Unfortunately, I lost on that part of it, but go ahead. So I think under either, whether it's the definition of pollutant, which I don't think LaSalle said meets, or under the definition of the word disperse, which using EMC's own definition is, I believe, requires intentional act. Whether the court resolves either of those issues in our favor, we would respectfully request that the matter be remanded to the district court. And unless the court has any other questions for me, I would reserve my remaining time for rebuttal. Thank you. Ms. Jensen-Prouty, we'll hear from you. Thank you. May it please the court. Counsel, I'm appearing today on behalf of a respondent, EMC. And as has been previously mentioned, in 2013, the Minnesota Supreme Court decided the case of Midwest Family versus Walters. And in that case, the court said that it was adopting a non-technical, plain meaning approach to applying the absolute plain meaning exclusion. Two claims that arise out of the ordinary course of business like we have here. And under a plain meaning approach to the absolute pollution exclusion, you don't look to experts to define terms. You look to the plain meaning of the term contaminant and the plain meaning of dispersal. And much of Restaurant Recycling's briefing and argument to this court has been spent disputing the merits of the underlying liability case. They dispute that there was any lozellocid in the feed. They dispute that lozellocid is always a contaminant. But this is a coverage action. And coverage is determined by looking at the underlying liability complaint and the terms of the insurance policy. Coverage doesn't depend on whether what's being alleged in the underlying complaint is true or not. And a motion for judgment on the pleadings- How would that work? Say they allege that both of these contaminants were in there, and you say at least one of them is a pollutant, so the exclusion applies. You don't have a duty to defend, but then it turns out when the evidence is developed that one of the substances was not present, and suppose that eliminated the exclusion, then there would be coverage at that point for the liability, even though there was no duty to defend? Even if the- Is that how it would work? If the recycling had won the case on the merits, that wouldn't suddenly create a duty to defend and indemnify for that lawsuit. Because you look at what's initially alleged in the liability complaint, not whether or not it turns out to be true. So if the liability complaint had been amended somehow, then you would look at that amended liability complaint. But you don't look to the merits or to the truth or falsehood of what's being alleged. And on a motion for judgment on the pleadings, that doesn't change the nature of a coverage action. You still look to the underlying complaint and the policy. And restaurant recyclings argue that the court must accept that true, that allegations in its deck action complaint that are denying liability, that are saying, well, that lawsuit isn't always harmful. There was no lawsuit in the feed. Even though if you accept those allegations as true, that doesn't create a material issue of fact about coverage. And this is a coverage action. A material issue of fact about coverage is looking at the liability complaint and the terms of the insurance policy. And in this case, looking at the substantive issue of what is a pollutant. The policy of the absolute pollution exclusion applies to property damage which would not have occurred in whole or part, but for pollutants. And the whole or in part language means that exclusion applies when a pollutant is at least a part cause of the damage. And here it's alleged that Laska Doyle is a part cause of the damage. Every allegation of damage in the underlying complaint is that both Laska Doyle and Lozell Lozad caused the damage. There's no allegation that only Lozell Lozad on its own caused any damage. It's both of them together. So based on the allegations of the complaint, it's alleging an undisputed pollutant caused damage in part. Suppose we have the same litigation strategy that we have before us, but the underlying complaint in the other action, the new pork, whatever the plaintiff here, the underlying plaintiff says, I'm not quite sure what caused my pigs to die. But I think it could have been Laska Doyle, could have been Lozell Lozad. I just can't really figure it out. So I'm going to go ahead and have separate claims and sue in the alternative. Does that create a different obligation? That is a little different factual scenario, but that still would have been alleging that Laska Doyle in part caused the damage. And in Williams, the allegation was that radium and alpha particles and another chemical caused damage. And the court said, between radium and alpha particles, we don't need to decide if alpha particles is a pollutant, because radium is a pollutant, and where you have radium, you have alpha particles. And the underlying liability lawsuit in our case alleges that Laska Doyle is a byproduct produced by the manufacturer of Lozell Lozad, and that Laska Doyle contains Lozell Lozad. So it's alleging that they're there present in the same, where you have one, you have the other. So if you decide that Laska Doyle, if it's being alleged Laska Doyle's there, it's alleging damage in part by an undisputed pollutant. And in the Click case too, the pollution exclusion didn't apply to exclude all the causes of damage. Because some of the damage was caused by pollution that wasn't released into the atmosphere. But the court said the pollution exclusion precludes the entire duty to indemnify. Because the damage was caused in part by a pollutant released into the atmosphere. And if the court wants to move on, the court could decide the pollutant issue based on the whole or in part language and the fact that it's undisputed Laska Doyle is a pollutant. But the court can also move on and examine whether Lozell Lozad is a pollutant and decide that it is being alleged to be a contaminant in the underlying complaint. The plain meaning of contaminate is one that contaminates, it makes impure by contact or mixture. And the underlying complaint alleges in 22 paragraphs that Lozell Lozad contaminated Restaurant Recycling's fat product. It's alleging that Lozell Lozad should not have been there, that it made the fat product impure by contact or mixture. That allegation alone is enough to conclude that Lozell Lozad is being alleged to be a contaminant. But the underlying complaint goes further, it says Lozell Lozad is prohibited by the FDA for use in swine feed and that Lozell Lozad caused serious health issues for the swine. There's no allegation in the underlying complaint that you could read to infer that Lozell Lozad is not being alleged to cause damage to the swine. Maybe you can infer that some levels of Lozell Lozad don't have adverse effects on pigs. And that's what Restaurant Recycling argues based on that diseases of swine and paragraph 12 of the underlying complaint that says Lozell Lozad is not generally recognized as safe. So you can infer that in some instances it can be safe. But in this case, the underlying complaint is alleging that it is not safe. There's no allegation alleging that it was safe. And Restaurant Recycling also kind of gloms on to some buzzwords and says the underlying complaint needs to use the word illegal or unsafe level in order to be a contaminant. And there's no requirement to use any specific word in the underlying complaint to fall within the definition of a contaminant. You consider if the complaint is alleging that the Lozell Lozad made the fat product impure by contact or mixture, and it is. And one thing to note, in the Williams case, the underlying complaint did not use the word illegal, which Restaurant Recycling says that it did, it did not use the word illegal. That is something that the A circuit concluded that radium was an illegal substance based on the allegations that it exceeded the maximum contaminant level and that radium was a contaminant. Then the court reached the logical conclusion that it was an illegal substance in that case. And so based on the fact that the underlying complaint is alleging damage caused by a pollutant, the next issue is whether it's alleging a dispersal. The new fashion complaint alleges a dispersal of Lasso Lozad and Laska Doyle. The application of the absolute pollution exclusion requires property damage, which would not have occurred in whole or part, but for the actual alleged or threatened dispersal at any time of a pollutant. The plain meaning of the word disperse means to cause to break up and go in different ways to cause to become spread widely. There's some key points about the absolute pollution exclusion language to keep in mind when considering if there's been a dispersal here. One is that the absolute pollution exclusion says nothing about intent. When an exclusion in the policy requires intent, it expressly says so. There's an intentional act exclusion in the policy. The absolute pollution exclusion does not require dispersal to be done by the insured. The dispersal can be done by anyone. Do you have any idea, counsel, how these antibiotics and the antibiotic byproducts got into the fat? Was it because it was fed to the animals that produced the fat and then eventually found its way down the chain? Or did somebody introduce it at some part of the supply chain? It was introduced at some part of the supply chain. Okay. And came to restaurant, or yes, came to restaurant recycling, which then mixed it into its fat product because it didn't know that it was in the fat product. And there's been a recall all up and down the supply chain. So it really is analogous to my analogy, which is that you've got a bowl of soup and you introduce something else into that bowl of soup, perhaps unintentionally. And it finds its way in there, and the question is whether that's dispersal. Yes, I would agree. And I don't think that the absolute pollution exclusion requires any intent. There's no case law that has required intent to establish a dispersal. But even if it would require intent, it doesn't require intent to disperse a pollutant. And even restaurant recycling admits that in its reply brief. It says that in the Hansen case, there was intent to disperse because you intend to open and close a window. You don't do that by accident. While here, there was intent to mix the fat product and the soy oil together. That wasn't an accident. But again, the plain meaning of disperse and the dictionary definition says nothing about intent. And restaurant recycling tries to create this intent argument by looking at the word to cause to. But to cause to means that it has the effect of, not that there's any intent there. And prior provisions of the qualified pollution exclusion have contained a sudden and accidental exception in them. Which negates the fact that the inclusion of the word dispersal itself is meant to require intent. And looking at the allegations in the underlying complaint, it alleges that restaurant recycling blended soy oil with Lazalosid and Laskadoil with its restaurant grease to create its fat product. And that new fashion pork blended the contaminated fat product with other ingredients to make swine feed. And the allegation of blending and mixing the Laskadoil and Lazalosid soy oil with other products falls within the plain meaning of a dispersal. It is breaking up, it's spreading, it's going in different directions. It's not remaining contained in its unused state of soy oil. The soy oil didn't just stay on its own. It mixed and it dispersed with many other things and went to New Fashioned Pork, who then also dispersed it into their swine feed and then gave it to the pigs. And there's no need for the underlying allegations in the liability complaint to expressly use the word dispersal in order for the court to find a dispersal. And just to draw the court's attention to the case of Franklin versus Western National, which is in Minnesota Supreme Court from 1998, it says the words of the complaint need not precisely match the words of the policy. You look to what's being alleged and you consider if there's any way that, you know, does it fall within the plain meaning of these definitions. And I just want to reemphasize and close that the Minnesota Supreme Court has made an unanswered decision, and that is the binding precedent before this court today. And it's decided that Minnesota applies the plain meaning approach. It doesn't look to expert testimony. There's no need for a dispute about the merits and a coverage action. And I would ask on behalf of EMC that Judge Doty's decision be affirmed. As a matter of law, all of NFP's allegations in the underlying complaint are excluded by the absolute pollution exclusion. Thank you. Very well, thank you for your argument. Mr. Schwartz, would you care to make rebuttal? You may proceed. To answer your question, Judge Strauss, the manner in which the Losalicet or Laskadole got in here was from above restaurant recycling. It got introduced into this product by Sugaring. So to the extent that there was any dispersal, it was not by restaurant recycling. It was by an entity further up the chain of command. Was it spilled into it? Was it, I mean, is there any evidence on how it happened? There is, not before this court. Fair enough. If you look at A9 of the appendix in our original complaint. What page? A9 of the appendix. We give the line of the chain, and we state that it was, we believe that it was because glycerin traders introduced the Losalicet or Laskadole into the soil that was collected here by restaurant recycling. It wasn't dispersed by restaurant recycling. It was, to the extent it was dispersed, it was by somebody further up the chain of command from us that we didn't know about. We didn't- And you think it needs to be restaurant recycling that does the dispersal, not somebody else higher up in the supply chain? I do, because it's a contract between restaurant recycling and someone's wrongful action is somehow going to bind restaurant recycling. I think that flips on its head the privity between the parties. Does that read out, though, the at any time? In other words, it says dispersal, seepage, etc., at any time, that that's excluded. Does your argument read out the at any time point? No, I think that when you read that contract between the party and the insurance company, it's seeking to exclude coverage for a dispersal that the party that they're insuring actually did, not something that was unintentional through this chain of command that somehow got introduced into it improperly. I don't think it does. I think that that is exactly the privity between the parties here. And I think when you, the council- They could contract that there's no coverage for injuries caused by pollution emanating from a third party, if they want a contract for that. They could, but it didn't- It's not a matter of privity, it's a matter of what is the scope of the exclusion? I think, Your Honor, though, in your question, you're adding a provision to the contract that doesn't exist. It doesn't say at any time by any party. It says at any time. And to add by any party, I think- It's pretty absolute, though, that language, at any time. Doesn't say- Of all time. It doesn't say by the insured, either. It doesn't speak to which party does the polluting. I respectfully, I don't think that that would be good law if that's, if at any time, any party that does any things could somehow bar your insurance coverage, I don't think that that's good law. I think when council- You might be right, we're just asking why. I'm just asking why that is so. Well, you're buying insurance coverage for a specific purpose. And if you're the party that's actually doing the pollutant, I agree then at that point you should not get coverage. But if you're a party who did not disperse this pollutant, you should have the coverage under the contract that you were provided by EMC. And I note that my time is up now, unless there's any other questions. Thank you, Your Honors. All right, thank you for your arguments. Both counsel, the case is submitted and the court will file an opinion in due course. That concludes the argument calendar for this morning. Court will be in recess until 9 o'clock tomorrow.